No. 26-475

# In the United States Court of Appeals for the Ninth Circuit

AURORA REGINO,

*Plaintiff-Appellant*,

v.

GREG BLAKE, SUPERINTENDENT

*Defendant-Appellee,*

On Appeal from the United States District Court
for the Eastern District of California, Sacramento
The Hon. Daniel J. Calabretta
(Dist. Ct. No. 2:23-cv-00032-DJC-DMC)

### BRIEF OF *AMICUS CURIAE* DEFENSE OF FREEDOM INSTITUTE FOR POLICY STUDIES IN SUPPORT OF PLAINTIFF-APPELLANT AND REVERSAL

Donald A. Daugherty, Jr.
  *Senior Counsel, Litigation*
Martha A. Astor
Defense of Freedom Institute
1455 Pennsylvania Avenue, NW
Suite 400
Washington, DC 20004
(414) 559-6902
Don.Daugherty@dfipolicy.org
Martha.Astor@dfipolicy.org

March 13, 2026                    *Counsel for Amicus Curiae*

# **CORPORATE DISCLOSURE STATEMENT**

Counsel for *amicus curiae* certify that the Defense of Freedom Institute for Policy Studies is a nonprofit corporation, has no parent companies, subsidiaries, or affiliates, and that no publicly held company owns more than 10 percent of its stock.

s/ <i>Donald A. Daugherty, Jr.</i><br>Donald A. Daugherty, Jr.

Dated: March 13, 2026

i

# <u>TABLE OF CONTENTS</u>

CORPORATE DISCLOSURE STATEMENT ............................................. i

TABLE OF CONTENTS .................................................................... ii

TABLE OF AUTHORITIES ............................................................... iii

STATEMENT OF INTEREST ............................................................... 1

SUMMARY OF ARGUMENT ............................................................... 2

ARGUMENT ....................................................................................... 5

  I.   In *Mirabelli*, the Supreme Court Found that a Parental Rights Claim Similar if Not Identical to Regino's Claim is Likely to Succeed on the Merits. .............................................................. 5

  II.  *Mahmoud* Reinforces Regino's Assertion of Long-Established Parental Rights Here. ...................................................................... 11

     A. Mahmoud Requires That Public Schools Provide Parents with Greater Transparency, Not Less. ........................................... 15

     B. The District Distorts the Traditional Conception of the Parent-Child Relationship As Understood by *Mahmoud* and All Other Constitutional Jurisprudence.................................................... 18

     C. Like the Parents In *Mahmoud*, Regino Seeks Only Modest Relief That Will Not Disrupt School Curriculum or Administration.................................................................... 20

     D. Under *Mahmoud*, the District Cannot Force Regino Into An Unconstitutional Choice. ..................................................... 21

  CONCLUSION................................................................................ 233

  CERTIFICATE OF COMPLIANCE ................................................. 24

  CERTIFICATE OF SERVICE ......................................................... 25

# TABLE OF AUTHORITIES

**Cases**

Alan L. v. Lexington Pub. Sch.,
    No. 25-13047-FDS, 2025 U.S. Dist. LEXIS 267350
    (D. Mass., Dec. 30, 2025) ....................................................................21

Mahmoud v. Taylor,
    606 U.S. 522 (2025)................. 1, 2, 3, 4, 5, 11, 12, 14, 16, 18, 20, 21, 22

Meyer v. Nebraska,
    262 U.S. 390 (1923)........................................................... 2, 7, 8, 13, 16

Mirabelli v. Bonta,
    No. 25A810,
    2026 U.S. LEXIS 1192 (2026)....................2, 6, 7, 8, 9, 10, 11, 12, 15, 13

Mirabelli v. Olson,
    No. 3:23-cv-768-BEN-WVG, 2025 U.S. Dist. LEXIS 264381
    (S.D. Cal., Dec. 22, 2025)............................... 2, 3, 5, 7, 8, 10, 11, 18, 20

Parham v. J.R.,
    442 U.S. 584 (1979)............................................... 1, 8, 10, 11, 16, 19, 20

Pierce v. Society of Sisters,
    268 U.S. 510 (1925)........................................................... 2, 7, 8, 13, 14

Regino v. Blake,
    No. 2:23-cv-00032-DJC-DMC, 2026 U.S. Dist. LEXIS 8616
    (E.D. Cal., Jan. 15, 2026)....................................................... 8, 9, 11, 17

Regino v. Staley,
    133 F.4th 951 (9th Cir. 2025) .................................................. 3, 6, 9, 10

Tinker v. Des Moines Indep. Cmty. Sch. Dist,
   393 U.S. 503 (1969)..................................................................22

Troxel v. Granville,
   530 U.S. 57 (2000) ...............................................................19

Wisconsin v. Yoder,
   406 U.S. 205 (1972)....................................... 12, 13, 14, 15, 20

## Other Authorities

Katie J.M. Baker,
   When Students Change Gender Identity, and Parents Don't Know,
   N.Y. Times (Jan. 22, 2023) ...........................................17-18

Suzanne Pollack,
   'Refrigerator Curriculum' Includes Form to Opt Out of Class,
   MyMCM (Aug. 21, 2025) ....................................................16

## STATEMENT OF INTEREST[1]

*Amicus* the Defense of Freedom Institute for Policy Studies ("DFI") is a nonprofit, nonpartisan 501(c)(3) institute dedicated to defending and advancing freedom and opportunity for every American family, student, entrepreneur, and worker, and to protecting the civil and constitutional rights of Americans at school and in the workplace. DFI was founded in 2021 by former senior leaders of the U.S. Department of Education who are experts in education law and policy. As part of its mission, DFI focuses on protecting constitutional parental rights like those at issue in this case. DFI filed an amicus brief in *Mahmoud v. Taylor*, 606 U.S. 522 (2025), and has provided testimony to the U.S. House Subcommittee on Early Childhood, Elementary and Secondary Education hearing on

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E), counsel for amicus curiae certifies that no counsel for a party authored this brief in whole or in part, and that no party or counsel for a party, or any other person besides amicus curiae, its members, or its counsel made a monetary contribution intended to fund the preparation or submission of this brief. Plaintiff-Appellant has granted written consent to the filing of this brief directly to counsel for amicus curiae. Defendant-Appellee has not responded to repeated requests to secure consent. Accordingly, a motion for leave has been filed with this brief.

1

Defending Faith and Families Against Government Overreach on the implications of *Mahmoud*.

## <u>SUMMARY OF ARGUMENT</u>

The District Court decision runs counter to two recent Supreme Court decisions reaffirming parental rights under the Constitution, and rejecting narrow conceptions of those rights like the District[2] offers here.

Just a few weeks ago, the Supreme Court found in *Mirabelli v. Bonta* that the *Meyer-Pierce* right includes the right of parents "not to be shut out of participation in decisions regarding their children's mental health. *Mirabelli v. Bonta*, No. 25A810, 2026 U.S. LEXIS 1192, at *6 (2026) (*per curiam*) (citing *Parham v. J.R.*, 442 U.S. 584, 602 (1979)); *see also Mirabelli,* at *6 (citing *Pierce v. Society of Sisters*, 268 U.S. 510, 534–535 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399–400 (1923)) ("parents – not the State – have primary authority with respect to 'the upbringing and education of children'"). *Mirabelli* involved a challenge to California education law (referred to as the "Parental Exclusion Policies," *see Mirabelli v. Olson*, No. 3:23-cv-768-BEN-WVG, 2025 U.S. Dist. LEXIS

---

[2] Except where otherwise noted, the defined terms used herein have the same meanings as used in Appellant's Opening Brief.

264381, at *13-14 (S.D. Cal., Dec. 22, 2025)), from which the Policy is derived. Under *Mirabelli*, the policy of California public schools (including the Policy here) facilitating the transition of students to different names and genders without the knowledge or involvement of their parents violates the same *Meyer-Pierce* rights asserted by Regino here.[3]

Although *Mirabelli* is an interim decision from the Supreme Court's emergency docket, its conclusions are directly on point for the dispositive issues in this case, and must be considered here.

While *Mirabelli* is directly on point, the issues now before this Court also clearly echo those disposed of last June in *Mahmoud v. Taylor*, 606 U.S. 522 (2025). In fact, many of the positions taken by the District mirror those taken by the Montgomery County, Maryland Public Schools ("MCPS") in *Mahmoud*, which were addressed and rejected by the Supreme Court. Although *Mahmoud* primarily relied on the Free Exercise Clause, it still made clear its deep roots in the substantive due

---

[3] Regino's parental rights under the First Amendment are subsumed within her substantive due process rights under the Fourteenth Amendment, *see Regino v. Staley*, 133 F.4th 951, 960-61 (9th Cir. 2025), and, for purposes of clarity, this brief focuses on the latter.

3

process rights at issue here, and provides essential guidance as the Supreme Court's most recent, extended discussion of parental rights under the Constitution.

*Mahmoud* establishes that the transmission of truthful, relevant information by the state to a parent is fundamental to the exercise of parental rights, and the District's position flies in the face of the transparency required by *Mahmoud*. The Policy excludes parents from knowledge of and involvement in the most fundamental aspects of their children's lives. Like the parental right affirmed in *Mahmoud*, Regino's rights here are meaningless without the same kind of notice from her children's school as that ordered by the Supreme Court in *Mahmoud*.

The District claims that it wants to treat a child's transitioning as "confidential," but the child will be using publicly using a different name and gender at school. Only the parents will be in the dark. In fact, the District's (purported) interest in confidentiality, as well as much of the rest of its justification for the Policy, turn age-old concepts about the parent-child relationship – under the Constitution and as a matter of common sense -- on their head.

4

Also like the parents in *Mahmoud*, Regino seeks only modest relief – namely, to be told about significant developments in her children's lives. This information has little to no relation to school curriculum or administration, so government interests in administrative efficiency or the like are not implicated.

Finally, the Policy forces Regino into the same unconstitutional choice that was presented in *Mahmoud* – either send your child to a public school or retain a fundamental parental right. As in *Mirabelli*, this Court should reject it.

## ARGUMENT

### I.    IN MIRABELLI, THE SUPREME COURT FOUND THAT A PARENTAL RIGHTS CLAIM SIMILAR IF NOT IDENTICAL TO REGINO'S CLAIM IS LIKELY TO SUCCEED ON THE MERITS.

In *Mirabelli*, the Supreme Court concluded, "Gender dysphoria is a condition that has an important bearing on a child's mental health, but when a child exhibits symptoms of gender dysphoria at school, California's policies conceal that information from parents and facilitate a degree of gender transitioning during school hours. These policies likely violate parents' rights to direct the upbringing and education of their

5

children." *Mirabelli*, 2026 U.S. LEXIS 1192, at *6  Thus, the Supreme Court allowed the *Mirabelli* district court's permanent injunction preventing enforcement of the Parental Exclusion Policies -- from which the Policy is drawn -- to take effect while the state's appeal before this Court proceeds.

*Mirabelli* is directly on point here.  The Policy "is based on a sample regulation circulated by the California School Boards Association in accordance with directives issued by the California Department of Education, a regulation similar to the policies addressed [in *Mirabelli*] that restrict school teachers from informing parents about their child's gender identity changes." *Mirabelli*, 2025 U.S. Dist. 264381, at *14 n.2 (citing *Regino*, 133 F.4th at 956 n.1); *see also* Emergency Application to Vacate Interlocutory Stay Order, *Mirabelli v. Bonta*, 607 U.S. ___ (2026), No. 25A810, 2026 U.S. LEXIS 1192.  These Parental Exclusion Policies have been adopted by 598 local school districts in California, and include the Policy. *Mirabelli*, 2025 U.S. Dist. 264381, at *14.  Both the Parental Exclusion Policy and the Policy deny disclosure of a child's transgender status to parents without the child's consent absent a "compelling" reason

to do so.[4] *Compare Chico Unified School District Administrative Regulation Policy 5145.3* ("CUSD Policy 5145.3"), R. at ER-180-181, to Complaint at 238-249, *Mirabelli*, 2025 U.S. Dist. 264381 (No. 3:23-cv-768-BEN-WVG), California Dep't of Educ, *Frequently asked Questions about the School Success and Opportunity Act (Assembly Bill 1266)* ("*FAQ's*"). Both also require that all school personnel accept a student's gender identity assertions. *Compare CUSD Policy 5145.3*, at 5-6 to *FAQ's,* at 5-7.

The Supreme Court drew from "long-established precedent [holding that] parents — not the State — have primary authority with respect to 'the upbringing and education of children.'" *Mirabelli*, 2026 U.S. LEXIS 1192, at *6 (citing *Pierce*, 268 U.S. at 534-35 and *Meyer*, 262 U.S. at 399-400). The *Meyer-Pierce* right established by this precedent "includes the right [of parents] not to be shut out of participation in decisions regarding

---

[4] In fact, the District is subject to the *Mirabelli* injunction and Regino is part of the statewide class of parents protected by it. *See Mirabelli*, 2026 U.S. LEXIS 1192, at **8; 3-4; *Protections for LGBTQ+ Students: AB 1955*, (March 3, 2026), https://shorturl.at/oagjJ (posting notice of Class-Wide Permanent Injunction pursuant to the *Mirabelli* case line and requiring parental notice of "gender incongruence"). Thus, the District should already be enjoined from failing to provide her with the information she seeks in this case.

their children's mental health." *Mirabelli*, 2026 U.S. LEXIS 1192, at *6 (citing *Parham*, 442 U.S. at 602); *see also Mirabelli*, 2026 U.S. LEXIS 1192, at *9 (Barrett, J., concurring) ("the doctrine of substantive due process has long embraced a parent's right to raise her child, which includes the right to participate in significant decisions about her child's mental health.") (citing *Pierce*, 268 U.S. 510; *Meyer*, 262 U.S. 390; *Parham*, 442 U.S. 584). While the District Court here believed that Regino had not even properly alleged a violation of her *Meyer-Pierce* rights, *see Regino v. Blake*, No. 2:23-cv-00032-DJC-DMC, 2026 U.S. Dist. LEXIS 8616, at *32 (E.D. Cal., Jan. 15, 2026), the Supreme Court found that parents like Regino had made a strong showing that they were likely to prevail on the merits of that claim, *see Mirabelli*, 2026 U.S. LEXIS 1192, at *7-8.

Also unlike here, the *Mirabelli* district court had the benefit of a full summary judgment record, including extensive briefing, expert and other evidence, and several hearings. *See Mirabelli,* 2025 U.S. Dist. LEXIS 264381, *13-19; *see also Mirabelli*, 2026 U.S. LEXIS 1192, at *11 (Barrett, J., concurring) (noting that "the injunction of California's policy . . . *was* entered after a full merits process"). The instant case has not

8

proceeded past the District's motion to dismiss, and no record has yet been developed. The District Court tried to distinguish the *Mirabelli* district court decision on two grounds but, as shown by the Supreme Court, the distinctions fail.

First, the District Court believed that "there is no careful formulation of the fundamental right at issue as the [*Mirabelli* district] court seems to couch the various articulations in a broad parental right to make decisions about their children." *Regino v. Blake*, No. 2:23-cv-00032-DJC-DMC, 2026 U.S. Dist. LEXIS 8616, at *24 (E.D. Cal., Jan. 15, 2026) (citing *Regino,* 133 F.4th at 964). However, Regino's articulation of her parental right is essentially the same as that in *Mirabelli*; there is no material difference between Regino's allegation of her parental rights to consent to when the state provides health care treatment to her children, *see* Second Amended Complaint at ¶ 9, *Regino*, 2026 U.S. Dist. LEXIS 8616, No. 2:23-cv-00032-DJC-DMC; to make important decisions in her children's lives, *see id.*; and to be notified and told the truth when her children socially transition at school, *see id.* ¶¶ 95, 95 n.2, on the one hand, and the parents' successful substantive due process claims in *Mirabelli, see Mirabelli*, 2026 U.S. LEXIS 1192, at *6, on the other. Given

9

that the Supreme Court found that the parental right at issue in *Mirabelli* was likely to have been violated, this Court should at the least find that Regino has adequately plead the same parental right.

The second ground relied on by the District Court was that the *Mirabelli* district court "brushe[d] off the defendant's argument that the policies are not social transitioning, or even if they are, then it is not medical care." *Regino v. Blake*, 2026 U.S. Dist. LEXIS 8616, at \*24 (citing *Mirabelli*, 2025 U.S. Dist. LEXIS 264381, at \*38). The District Court disagreed, stating, "Whether the policy constitutes a form of medical treatment is crucial to determining whether it falls within the substantive due process right to consent to medical treatment." *Regino*, 2026 U.S. Dist. LEXIS 8616, at \*24 (citing *Regino,* 133 F.4th at 965). However, the Supreme Court addressed the same social transitioning that is at issue here, specifically finding that parents had a long-established right "not to be shut out of participation in decisions regarding their children's mental health," *Mirabelli*, 2026 U.S. LEXIS 1192 at \*6 (citing *Parham*, 442 U.S. at 602); *see also Mirabelli*, 2026 U.S. LEXIS 1192 at \*9 (Barrett, J., concurring) ("California's nondisclosure policy thus quite obviously excludes parents from highly important

10

decisions about their child's mental health") (citing *Parham*, 442 U.S. at 601-04); *see also Mirabelli*, 2026 U.S. LEXIS 1192, at *16 (Kagan, J., dissenting) ("California's policy, in depriving all parents of information critical to their children's health and well-being, could have crossed the constitutional line"), and not getting hung up on whether it constituted health care treatment as a threshold, legal matter. Regino's allegations regarding the process of social transitioning, *see* Second Amended Complaint at ¶¶ 4, 33, 98, 106, 115, 120, *Regino*, 2026 U.S. Dist. LEXIS 8616, No. 2:23-cv-00032-DJC-DMC, are not materially different from the process at issue in *Mirabelli*, *see Mirabelli*, 2025 U.S. Dist. LEXIS 264381 at *14-18, and like the *Mirabelli* parents, her *Meyer-Pierce* rights include not being "shut out of participation in decisions regarding [her] children's mental health." This Court should not treat her allegations differently than the Supreme Court treated the same claims on their merits.

## II. *MAHMOUD* REINFORCES REGINO'S ASSERTION OF LONG-ESTABLISHED PARENTAL RIGHTS HERE.

Although *Mahmoud* focused primarily on the parents' Free Exercise claim, the decision makes clear that it also has deep roots in

*Meyer-Pierce* and other Fourteenth Amendment substantive due process rights, including those asserted by Regino.[5]

*Mahmoud* centered on whether the MCPS policy of introducing LGBTQ-inclusive storybooks into the pre-K, kindergarten, and elementary school curriculum, without notifying parents or allowing them to opt their children out of participating in the storybook series, violated the parents' right to direct the religious upbringing of their children.  The Supreme Court concluded that the parents were entitled to a preliminary injunction, finding that the MCPS policy imposed a burden similar to the one struck down in *Wisconsin v. Yoder*, 406 U.S. 205 (1972).  *Mahmoud*, 606 U.S. at 592.  *Mahmoud* found that in both the case before it and *Yoder*, the challenged government action "'substantially interfer[ed]" with parental rights.  *Mahmoud*, 606 U.S. at 565 (quoting *Yoder*, 406 U.S. at 218).

*Yoder* was critical precedent for *Mahmoud*, and the older decision relies heavily on *Meyer-Pierce* jurisprudence.  Citing *Pierce*, *Yoder* held

---

[5] In addition to substantive due process, *Mirabelli* also concluded that the parents were likely to defeat California's challenge to the permanent injunction on Free Exercise grounds.  *Mirabelli*, 2026 U.S. Lexis 1192, at *5-6.

that a state's responsibility to educate its citizens cannot "unreasonably interfere[] with the interest of parents in directing the rearing of their offspring." *Yoder*, 406 U.S. at 213 (citing *Pierce*, 268 U.S. at 534). Such interference with Regino's parental right, however, is precisely what the Policy does.

> Relying further on *Pierce*, *Yoder* stated,
>
> The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition. If not the first, perhaps the most significant statements of the Court in this area are found in *Pierce* v. *Society of Sisters*, in which the Court observed:
>
>> '. . . . The child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations.'

*Yoder,* 406 U.S. at 232-33 (quoting *Pierce*, 268 U.S. at 534-35 (citing *Meyer*, 262 U.S. 390)); *see also Yoder*, 406 U.S. at 233 ("when the interests of parenthood [such as those set forth in *Pierce*] are combined with a free exercise claim of the nature revealed by this record," heightened scrutiny is warranted). The Policy's exclusion of Regino from a critical decision in her children's lives cannot survive the weight of history, culture, and law

13

regarding the respective roles of the parent and state in a child's upbringing, as recognized in *Yoder* and *Pierce*.

*Mahmoud*, too, referred back to *Pierce*, stating that the parental right to direct the religious upbringing of children is not "confine[d] [to] one's own home. Rather, it extends to the choices that parents wish to make for their children outside the home." *Mahmoud*, 606 U.S. at 547 (citing *Pierce*, 268 U.S. at 532-35). Similarly, the rights asserted by Regino extend to choices she wishes to make about her children's lives outside her home, including at school and especially regarding issues unrelated to their education children.

*Mahmoud* cannot be considered a Free Exercise decision exclusively, as that would mean that nonreligious parents have no right to notice or to opt their children out of participating in parts of the curriculum that seriously threaten their rights to raise the children. The Constitution cannot protect rights of religious parents in the care, custody, control, upbringing, and education of their children, but leave non-religious parents unprotected. Regino's specific asserted right may not be based on the text of the Free Exercise Clause, but it is certainly well within parental substantive due process rights cited by *Mahmoud*

14

and *Yoder* and long recognized under the Fourteenth Amendment. *Mirabelli* confirms this. *See Mirabelli*, 2026 U.S. Lexis 1192, at \*5-6.

### A. *Mahmoud* Requires That Public Schools Provide Parents with Greater Transparency, Not Less.

Critical to the rights affirmed in *Mahmoud* was the requirement that parents be given notice of what was occurring at their children's schools. If anything, given online and other technology that allow parents greater visibility into their children's lives at school, the presumption in education should be towards giving parents more information, not less, as the Policy does.

The right to opt a child out of discrete portions of the curriculum that deeply undermine a family's faith is meaningless without prior knowledge about the curriculum. Thus, the *Mahmoud* Court ordered MCPS to notify parents in advance whenever the storybooks or similarly controversial materials were to be used, and then to allow children to be excused from such instruction. *Mahmoud,* 606 U.S. at 569. As a direct result, each semester MCPS students now receive refrigerator magnets detailing the upcoming curriculum, including books to be read, and the same information is made readily available to parents online, so that parents can then decide whether to exercise their opt out rights. *See*

15

Suzanne Pollack, *'Refrigerator Curriculum' Includes Form to Opt Out of Class*, MyMCM (Aug. 21, 2025), https://shorturl.at/BeZNl

As with the opt out right recognized in *Mahmoud*, a parental substantive due process right means nothing without some notice of important developments in their children's lives. For example, in *Meyer*, "the right of parents to engage [teachers] to instruct their children" in a foreign language would have been meaningless if the parents did not know the languages that schools were teaching their children in the first place. *Meyer,* 262 U.S. at 400. Here, however, the Policy denies Regino information even more critical to her children's lives than the foreign languages they are taught.

Similarly, *Parham* described the parental right as including the "'high duty' **to recognize symptoms of illness** and to seek and follow medical advice," *Parham*, 442 U.S. at 602 (emphasis added); obviously, parents cannot decide on appropriate health care treatment for their children unless they first are aware of symptoms. There seems to be no dispute that a child's interest in changing their name and gender is often a symptom of gender dysphoria, and denying parents access to that

information is denying them the ability to exercise their constitutional rights.

The District claims that denial of information under the Policy protects a child's privacy and promotes confidentiality. *See Regino*, 2026 U.S. Dist. LEXIS 8616, at *46-47. This makes no sense practically, as well as in light of the Policy itself.

As a practical matter, if a student's name and gender suddenly change, it will not go unnoticed at school. Further, the Policy assigns the school an affirmative duty to tell nearly everyone at the school about the minor's life-altering decision, and order that they all accommodate the decision. The Policy sets forth no meaningful nondisclosure requirements to keep the child's new name and gender confidential at school. Even schoolmates' families and other people outside the school community will almost certainly come into possession of the information denied to the child's parents. Here for example, after the District urged A.S. not to tell her mother about her decision, she told her grandmother, who in turn told her mother. Second Amended Complaint at ¶ 6, *Regino*, 2026 U.S. Dist. LEXIS 8616, No. 2:23-cv-00032-DJC-DMC; *see also* Katie J.M. Baker, *When Students Change Gender Identity, and Parents Don't*

17

*Know*, N.Y. Times (Jan. 22, 2023), https://shorturl.at/T62Xt. Such "breaches" of confidence will be inevitable and common, not to mention intentional under the Policy.

The Policy's effect is to make the child's schoolmates, school administrators, school support groups, and everybody else aware of the child's life-altering decision. Everyone, that is, except for the child's own parents. Without knowledge of such monumental developments in their child's life, parents cannot exercise their right of care, custody and control.

### B. The District Distorts the Traditional Conception of the Parent-Child Relationship As Understood by *Mahmoud* and All Other Constitutional Jurisprudence.

Defending the Policy, the District inverts the nature of the parent-child relationship, as traditionally understood by the law and as matter of common sense. Placing authority for the decision whether to change a child's name and gender with the child, as the Policy does, *see Mirabelli*, 2025 U.S. Dist. LEXIS 264381 at *85-86, is like letting the schoolchildren in *Meyer* decide whether to learn German, or those in *Pierce* decide whether to attend a private or public school. This would, of course, be absurd, as "[t]he law's concept of the family rests on a presumption that

18

parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions." *Parham*, 442 U.S. at 602. Nonetheless, as with its desire to afford parents less transparency, it is what the District argues for here.

"[T]he interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by this Court. . . . . Accordingly, [ ] so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Troxel v. Granville*, 530 U.S. 57, 68 (2000). Nonetheless, the District seeks to place a critical aspect of the care, custody, and control of Regino's children – namely, their names and gender -- with the children themselves, and without any hint that she is somehow an unfit parent.

The Policy also turns on the false presumption that parents will somehow do harm to their child if they become aware of the child's interest in changing his or her name and gender. Again, under *Parham*, there is no reason to presume that Regino, or parents generally, do not

19

"adequately care[] for [their] children."  Rather, the law "historically . . .

has recognized that natural bonds of affection lead parents to act in the

best interests of their children."  *Parham*, 442 U.S. at 602.  On an issue

as fundamental and sensitive as here, with no educational dimension,

and without any reason to doubt Regino's affection for her children, the

District cannot insert itself between parent and child.

### C. Like the Parents In *Mahmoud*, Regino Seeks Only Modest Relief That Will Not Disrupt School Curriculum or Administration.

Like the parents in *Mahmoud*, Regino seeks only modest relief and,

even more so than in *Mahmoud*, her requested relief will not interfere

with the District's educational mission.  Responding to concerns about

federal intrusion on local control of schools, the *Mahmoud* Court stated,

"What the parents seek here is not the right to micromanage the public

school curriculum, but rather, to have their children opt out of a

particular education requirement that burdens their well-established

right 'to direct the religious upbringing' of their children."  *Mahmoud*,

606 U.S. at 568 (quoting *Yoder*, 406 U.S. at 213-14); *see also Mirabelli*,

2025 U.S. Dist. LEXIS 264381, at *50 ("The plaintiff parents are not

claiming that the Fourteenth Amendment gives them a right to prescribe

school curriculum, or force the schools to administer medical care, or disclose student private personal information to unrelated adults."). Similarly, Regino hardly seeks to micromanage the curriculum or direct the administration of her children's school, which are clearly the province of the school. Transitioning to a different name and gender has nothing to do with curriculum or administration. Regino simply wants to know what is going in her children's lives.

### D. Under *Mahmoud*, the District Cannot Force Regino Into An Unconstitutional Choice.

Like MCPS in *Mahmoud*, the District seeks to force Regino into an unconstitutional choice. Because of the Policy, parents must decide between either sending their child to a public school or retaining the right to be involved in a fundamental aspect of their child's life that has little if anything to do with education. *Mahmoud* rejected this unconstitutional choice, stating that the government cannot condition the benefit of a free public education on parents' acceptance of a restriction on their constitutional rights. *Mahmoud*, 606 U.S. 522; *see also Alan L. v. Lexington Pub. Sch.*, No. 25-13047-FDS, 2025 U.S. Dist. LEXIS 267350 (D. Mass., Dec. 30, 2025) (ordering school district to permit parents to opt child out of controversial book series because

"[u]nder well-established constitutional principles, defendants cannot force plaintiff to choose between foregoing the valuable benefit of having his child attend public kindergarten and exposing his child to materials that would burden his free exercise of religion.") (citing *Mahmoud*, 606 U.S. at 561). Similarly, the District cannot do so.

Much like the high school students in *Tinker v. Des Moines Indep. Cmty. Sch. Dist.* parents do not "shed their constitutional rights [when their child passes through] the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). *Mahmoud* confirms this. Other than in circumstances involving abuse, adoption, or other, universally-recognized grounds, there is no point at which parental rights are completely cut off. While their child is in school, focusing on reading, writing, mathematics, and the like, parental control necessarily wanes. However, the specific decision at issue here – what a child's name and gender should be -- belongs in the realm of the family, not the state.

## <u>CONCLUSION</u>

For the foregoing reasons, as well as those set forth in Appellant's Opening Brief, this Court should reverse the decision of the District Court.

March 13, 2026                                   Respectfully submitted,


<u>s/ *Donald A. Daugherty, Jr.*</u>
Donald A. Daugherty, Jr.
Senior Counsel, Litigation
Martha A. Astor
Counsel Litigation
Defense of Freedom Institute
for Policy Studies
1455 Pennsylvania Avenue, NW
Suite 400
Washington, DC 20004
(414) 559-6902
Don.Daugherty@dfipolicy.org
Martha.Astor@dfipolicy.org

*Counsel for Amicus Curiae*

23

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that:

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

This document complies with the word limits established by Federal Rule of Appellate Procedure 29(a)(5) because the brief contains 4424 words, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f).

Dated: March 13, 2026
Washington, D.C.                              s/*Donald A. Daugherty, Jr.*

Donald A. Daugherty, Jr.
Counsel for Amicus Curiae

24

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I e-filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate electronic submission system on March 13, 2026.


Dated:  March 13, 2026
Washington, D.C.

*s/Donald A. Daugherty, Jr.*
Donald A. Daugherty, Jr.
Counsel for Amicus Curiae