**No. 26-475**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

Aurora Regino,
*Plaintiff-Appellant,*

v.

Superintendent Greg Blake, in his official capacity,
*Defendant-Appellee*

_____

**On Appeal from the United States District Court for the Eastern District of
California, Sacramento**

**No. 2:23-cv-00032-DJC-DMC Hon. Daniel J. Calabretta**

_____

*Amici Curiae* **Brief of America's Frontline Doctors and Dr. Simone Gold,
M.D., J.D. In Support of Plaintiff-Appellant for Reversal**

**Respectfully Submitted,**

**David A. Dalia**
Attorney at Law
*Counsel of Record*
700 Camp Street
New Orleans, LA 70130
T: 504-524-5541
davidadalia@gmail.com
Counsel for *Amici Curiae*,
America's Frontline Doctors and Dr.
Simone Gold, M.D., J.D.

**Table of Contents**..................................................................................ii

**Table of Authorities**............................,,...........................................iii

**A Matter of Great Public Importance**...............................................1

**Interest of *Amici Curiae***..................................................................2

**Summary of Argument**......................................................................3

**Argument**...........................................................................................7

**I.      Respondent school district official cannot secretly usurp fundamental parental rights by "socially transitioning" gender-confused school children without the knowledge or consent of their parents, because of a disagreement of opinion regarding gender dysphoria treatment. There must be accountability. The current weight of research shows that parental opinions in this case are likely correct, and the school's approach is likely contraindicated and based on discredited ideology. Secretly attempting to transition children to the opposite sex - an impossible task- is orders of magnitude more egregious than those recently enjoined by this Court in *Mahmoud v. Taylor*, and is a question of national importance. See *Parents Protecting Our Children, UA v. Eau Claire Area School Dist.*, 604 U. S. ___, ___–___ (2024) (Alito, J., dissenting from denial of *certiorari*) (slip op., at 1–2) Statement of Alito, J., joined by Justices Thomas and Gorsuch, *Lee v. Poudre School District R-1*, No. 25-89. Fortunately, this issue has now been resolved by *Mirabelli v Bonta*, which is dispositive.**

**II.      Research confirms attempts to secretly "transition" children by non-parent parties, absent parental knowledge or consent, can and will lead to irreparable psychological and physical harms to minor children, in violation of parents' fundamental rights. Respondent's unwarranted usurpations of parental authority also violate recent guidance from the**

**Department of Health and Human Services, Presidential Executive Orders, state Attorneys' General Opinions, and state criminal laws.**

**Conclusion**........................................................................15

**Table of Authorities**..............................................................3

Cases          Page(s)

*Chloe Cole v Kaiser Foundation Hospitals, Inc*.
STK-CV-UMM-2023-0001612. 10

*Lavigne v. Great Salt Bay Community School Board*, (25-759)   13

*Layla Jane v. Kaiser Foundation Hospitals, et al.* 10

*Lee v. Poudre School District R-1*,
      No. 25-89 (2025)   8

*Mabe v. San Bernardino County*,
      237 F.3d 1101 (9th Cir. 2001)   9

*Mahmoud v. Taylor*,
      145 S. Ct. 2332 (2024)    7, 8. 9

*Mirabelli v. Bonta*,
      No. 25A810 (2025)        6, 7, 8

*Parents Protecting Our Children, UA v. Eau Claire Area School Dist*., 604 U. S.
___,___–___ (2024) (Alito, J., dissenting from denial of *certiorari*) (slip op., at
1–2) Statement of Alito, J., joined by Justices Thomas and Gorsuch..........8,

*Skinner v. Oklahoma*,
    316 U.S. 535 (1942)        13

*Troxel v. Granville*,
    530 U.S. 57 (2000)        9, 12

*United States v. Skrmetti*,
    145 S. Ct. 1816 (2024)    5, 6, 9, 12

**Constitution**

First Amendment          6

Fourteenth Amendment   7

**Other Authorities**

Texas Attorney General Opinion No. KP-0401 (February 18, 2022)

Jan 28, 2025, Executive Order 14187, entitled "Protecting Children From
Chemical and Surgical Mutilation".
United States, Executive Office of the President, Executive Order 14190: Ending
Radical Indoctrination in K–12 Schooling.
    (Jan. 29, 2025)        11

American Psychiatric Association, Gender Dysphoria, 2013.
https://www.psychiatry.
org/File%20Library/Psychiatrists/Practice/DSM/APA_DSM-5-Gender-Dysphoria.
pdf

Philip J. Cheng, "Fertility Concerns of the Transgender Patient," Transl Androl

Urol. 2019; 9(3):209-218, https://www.ncbi.nlm.
nih.gov/pmc/articles/PMC6626312      24

Doctors Protecting Children Declaration, https://doctorsprotectingchildren.org
        12

Simone Gold, M.D., J.D.; Melanie Crites-Bachert, D.O., F.A.C.O.S., F.A.C.S.;
Brian Atkinson, M.D.; David Heller. AFLDS White Paper: The Civil Liberties and
Human Rights Implications of Offering Children Medical Mutilation Procedures.
July 2024. https://res.cloudinary.com/aflds /image/upload/v1720808

"The Gold Report: Medical Mutilation: Part 1 of 5 'The Reality of Gender
Affirming Care' with Dr. Melanie Crites-Bachert," https://
www.aflds.org/videos/post/the-gold-report-medical-mutilation-part-1-of-5-the-real
ity-of-gender-affirming-care-with-dr-melanie-crites-bacher

 "The Gold Report: Medical Mutilation: Part 2 of 5 'Female to Male' with Dr.
Melanie Crites-Bachert," https://www.aflds.org/videos/
post/the-gold-report-medical-mutilation-part-
2-of-5-female-to-male-with-dr-melanie-crites-bachert

 "The Gold Report: Medical Mutilation: Part 3 of 5 'Male to Female' with Dr.
Melanie Crites-Bachert," https://www.aflds.org/videos/
post/the-gold-report-medical-mutilation-part-3-of-5-male-to-female-with-dr-melan
ie-crites-bachert

"Miriam Grossman | Gender Ideology and the Medical Experiment on our
Children | NatCon 3 Miami" https://www.youtube. com/watch?v=wIh8tvRLqck


Miriam Grossman, M.D., Lost In Trans Nation: A Child Psychiatrist's Guide Out
of the Madness (New York, NY: Skyhorse Publishing, 2023)

Paul W. Hruz, M.D., Ph.D., Expert Declara-tion, Joint Appendix, Vol. 2, United
States v. Skrmetti, No. 23-477 (2024)

https://aflds.org/about-us/         2

https://childrenshealthdefense.org/defender/jury-awards-2-million-woman-who-sued-over-gender-affirming-surgery- teen    14

https://donoharmmedicine.org   12

https://libertycenter.org/wpcontent/uploads/2023/03/Draft-90-notice-to-sue-letter-002_ Redacted.pdf

https://x.com/benryanwriter/status/2017394408878993460

https://x.com/HHSGov/status/1927791449476567043

 "What Is A Doctor?" America's Frontline Doctors (2024), https://americasfrontline doctors.org/whatisadoctor; https://www.you tube.com/watch?v=T_bifKH7Jds


U.S. Dept. of Health and Human Services, Treatment for Pediatric Gender Dysphoria: Review of Evidence and Best Practices, May 1, 2025. https://opa.hhs.gov/sites/default/ files/2025-05/gender-dysphoria-report.pdf.

## A MATTER OF GREAT PUBLIC IMPORTANCE AND
## FRAP RULE 29 DISCLOSURES

Respondent school district cannot unconstitutionally usurp the fundamental parental role by secretly and egregiously "socially transitioning" gender-confused young school children because of a disagreement of opinion regarding proper treatment for gender dysphoria. Parents are entrusted with the wise guidance of their children, including the diuty to protect their children from harms. Desistance statistics and the weight of research show that the parental opinions in this case are most likely correct, and the school's approach is medically contraindicated. This is about saving lives.

The Free Speech Foundation, d/b/a America's Frontline Doctors, and Dr. Simone Gold, M.D., J.D., the founder and physician member ("*Amici Curiae*" or "AFLDS") respectfully file this *amici curiae* brief in support of the Plaintiff-Appellant for reversal in *Regino v. Blake,* 26-475 (9th Cir. 2025).[1]

For a list of recent and related United States Supreme Court *amici curiae* briefs filed by AFLDS and more about the interests of *Amici Curiae*, please see the Motion for Leave filed in this case.

---

[1] Pursuant to Rule 29, it is hereby certified that no counsel or any party authored or prepared this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation or submission of this brief.

## INTEREST OF *AMICI CURIAE*

*Amici Curiae* are the Free Speech Foundation, d/b/a America's Frontline Doctors ("AFLDS"), a non-partisan, not-for-profit organization of hundreds of member physicians from across the country, representing a range of medical disciplines and practical experience on the front lines of medicine, and its founder and expert physician and attorney member with over twenty years' experience as an emergency room physician in minority communities, Dr. Simone Gold, M.D., J.D. AFLDS' programs focus on a number of critical issues, including providing Americans with science-based facts for staying healthy; protecting physician independence from government overreach; advancing healthcare policies that protect the physician-patient relationship; and expanding healthy treatment options for all Americans who need them. Each of AFLDS' member physicians is deeply committed to the guiding principle of medicine: "FIRST, DO NO HARM." *Amici Curiae* are very concerned about the harms being inflicted upon the vast numbers of school children by operation of this well-meaning but ill-conceived policy. For more information about the interests of *Amici Curiae* herein, please see the accompanying Motion for Leave.

## SUMMARY OF ARGUMENT

It is "beyond debate" that the parent Petitioner is engaged in the lawful exercise of her fundamental parental rights to protect and shield her own beloved gender-confused child from attempts by Respondent school district to secretly "transition" her child to the opposite sex — an impossible task — without parental knowledge or consent.

Parents enjoy fundamental constitutional rights to protect their minor children from harms, including misguided pressure to "transition" to the opposite sex.

Respondent cannot usurp these constitutionally protected fundamental parental rights. The overwhelming weight of this Court's jurisprudence affirming parental rights under the Due Process clause of the Fourteenth Amendment leaves no doubt as to the lawful exercise of parental protection, supervision and authority The blatant but secret promotion of "transgender ideology" in this case is very troubling. *Amici Curiae* strongly protest using misleading phrases such as "gender-transition surgery" or "gender-affirming care," as these phrases are intentional distractions from where this ideology typically leads, which is to a permanent Frankenstein-esque mutilation of a minor child's healthy body.

This Court must never lose sight of what is medically at stake: permanent and irreversible loss of a minor child's ability to ever create/produce sperm or egg; permanent and irreversible loss of a minor child's ability to breast-feed, get pregnant, birth or father a baby; and permanent and irreversible damages to facial, body and vocal structures. The female child ends up with a lifelong "micro-penis" which typically cannot achieve penetrative intercourse, and the male child ends up with a lifelong chronic wound requiring multiple painful dilatations per day. The majority of both sexes have lifelong anorgasmia.

*Amici Curiae* see these controversial surgeries as medical mutilation of a healthy human body, harms to which this "secret social transitioning" may lead, and from which the appellant parent rightfully protects her young child. *Amici Curiae* do not use the phrase "gender-affirming surgery" because that phrase is a misleading marketing term. The phrase "*medical mutilation surgery*" accurately describes the surgical offerings which destroy healthy tissue; true "gender reassignment" surgery is medically impossible.

Parental protection and control is absolutely essential where confusing and dangerous transgender ideology, now largely discredited and lacking an evidentiary basis, can and does cause permanent and irreversible psychological and physical damage to Petitioner's child, which damage can constitute criminal

-4-

child sexual abuse.

Petitioner enjoys the absolute right and obligation to protect her child from secret indoctrination in "transgender ideology" at school. Petitioner's child lacks the capacity to understand these "transgender ideology" concepts without confusion, or to give informed consent to any dangerous procedures to which this ideology may lead, and which may cause her sterilization for life, to irreversible termination of her normal growth during puberty, to numerous serious and ongoing medical complications, and to a lifetime of medications, medical treatments, and a very high likelihood of regret. No third party can usurp Petitioner's fundamental parental rights. There is no common law precedent for any third party to grant permission to mutilate any other person's body. No parent nor government actor nor any physician has ever had such a right.

This principle was resoundingly reinforced in *United States v. Skrmetti*, 145 S. Ct. 1816 (2024). Further, numerous circuit decisions have upheld the fundamental right of parents to informed consent concerning their minor children, while simultaneously acknowledging that the states have a concurrent obligation to protect minors against bodily harm.

The results of unethical medical practitioners' manipulation of children is coming to light. In a recent groundbreaking verdict, a medical malpractice jury

awarded $2 million to a young woman detransitioner against her former so-called "gender-affirming care" psychologist and surgeon, who performed a double mastectomy upon the young teenage girl.

Solid research now shows that the vast majority of children (85% +) will outgrow "gender dysphoria" within a few years. The clinical success in treating gender dysphoria with "Watchful Waiting and Exploratory Therapy" is explained by Dr. Hruz, M.D., Ph. D. in his Expert Declaration filed in *United States v. Skrmetti*, No. 23-477, 145 S.Ct. 1816 (2024). The clinical benefits of "Watchful Waiting" are reflected by the positive statistics. 85+% of children suffering from gender dysphoria will outgrow it by the time they reach adulthood. This is an extremely significant fact. It shows that in the vast majority of cases, a school employee's unilateral decision to secretly socially transition a child to the opposite sex, without parental notice or consent, will be a well-meaning but profoundly misguided decision which will in all probability cause great harm to the child most of the time. Many European countries are now recognizing this fact.

Fortunately, the United States Supreme Court has now settled this issue in the recent landmark case of *Mirabelli, et al. v. Bonta, et al.,* 25A810 (2025), decided on March 2nd, 2026. The *Mirabelli* court recognized that the parents asserting their First Amendment Free Exercise rights were likely to succeed on the

merits of their claims, and were entitled to have the permanent injunction against the California school system's Parental Exclusion Policy reinstated. The court found that the act of secretly transitioning minors to the opposite sex against their parent's religious beliefs was worse than the no-opt-out policy for age-inappropriate storybooks enjoined in *Mahmoud v. Taylor,* 24-297 (2024). Also, the parents asserting their Due Process rights under the Fourteenth Amendment were likewise likely to succeed on the merits of their claims.

The *Mirabelli* decision is dispositive of this matter. Because of the substantially higher word limit, *Amici Curiae's* brief in *Mirabelli* more thoroughly explores the solid medical research informing these issues, regarding the lesser known medical and psychological hazards inherent in attempting to change one's sex. *Amici Curiae's Mirabelli* brief can be viewed here.[2] This *Regino amici curiae* brief is of necessity more abbreviated.

## ARGUMENT

I.     Respondent school district official cannot secretly usurp fundamental parental rights by "socially transitioning" gender-confused school children without the knowledge or consent of their parents, because of a disagreement of opinion

---

[2] See *Amici Curiae* brief filed by America's Frontline Doctors and Dr. Simone Gold, M.D., J.D., in support of application and for vacation of stay order, in *Mirabelli v Bonta*, 25A810, January 21st, 2026.
https://www.supremecourt.gov/DocketPDF/25/25A810/392273/20260121111320644_AFD-Mirabelli%20Amici%20Brief.pdf

regarding gender dysphoria treatment. There must be accountability. The current weight of research shows that parental opinions in this case are likely correct, and the school's approach is likely contraindicated and based on discredited ideology. Secretly attempting to transition children to the opposite sex - an impossible task- is orders of magnitude more egregious than those recently enjoined by this Court in *Mahmoud v. Taylor*, and is a question of national importance. See *Parents Protecting Our Children, UA v. Eau Claire Area School Dist*., 604 U. S. ___, ___–___ (2024) (Alito, J., dissenting from denial of *certiorari*) (slip op., at 1–2) Statement of Alito, J., joined by Justices Thomas and Gorsuch*, Lee v. Poudre School District R-1,* No. 25-89. Fortunately, this issue has now been resolved by *Mirabelli v Bonta*, which is dispositive.

Petitioner enjoys constitutionally protected fundamental parental rights over the care, custody and control of her minor daughter, fundamental parental rights which have been affirmed numerous times by this Honorable Court. These fundamental parental rights cannot be usurped or co-opted by governmental actors such as Respondent, or by private third parties. These fundamental parental rights broadly include guiding her child's education and medical care, and protecting her child from real or potential harms. Respondent must not be allowed to usurp and trample upon Petitioner's fundamental parental rights by secretly and recklessly causing severe and irreversible psychological harms and sexual abuse to her child by attempting to secretly transition her daughter to the opposite sex. Respondent engaged in this reprehensible behavior due to ill-advised viewpoint discrimination which favored controversial and now-discredited "transgender ideology." This recurring "secret transitioning" of minors has been found to be a question of

national importance.

Justice O'Connor definitively reaffirmed fundamental parental rights in *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000).

Most recently, these principles have been strongly reaffirmed in *United States v. Skrmetti*, 145 S.Ct. 1816 (2024) and *Mahmoud v. Taylor*, 145 S.Ct. 2332 (2024).

Respondent's secret interference with fundamental parental rights is blatant here. *Mirabelli* counsels tht it cannot continue.

In *Mabe v. San Bernardino County*, et al., 237 F.3d 1101, 1107 (9th Cir. 2001), the Ninth Circuit acknowledged the constitutional rights of families not to be subjected to unwarranted governmental interference without due process of law, except in emergency circumstances:

The school's misguided attempt to secretly transition Petitioner's daughter to impossibly become a son is colossal unwarranted governmental interference.

II.     Research confirms attempts to secretly "transition" children by non-parent parties, absent parental knowledge or consent, can and will lead to irreparable psychological and physical harms to minor children, in violation of parents' fundamental rights. Respondent's unwarranted usurpations of parental authority also violate recent guidance from the Department of Health and Human Services, Presidential Executive Orders, state Attorneys' General Opinions, and state criminal laws.

The psychological and physical harms to minor children caused by attempting to impossibly "transition" them to the opposite sex are well documented.

Medical malpractice lawsuits filed by "detransitioning" young adults are now winding their way through the court system. On January 30, 2026, detransitioner Fox Varian was awarded $2 million by a New York jury for malpractice after a mastectomy at age 16. Her mother testified that she opposed the "gender affirming" surgery but was pressured into consenting after Psychologist Dr. Einhorn told her Varian was suicidal. Also see *Layla Jane v. Kaiser Foundation Hospitals, et al.*, pending in California Superior Court, San Joaquin County. The plaintiff is a young woman who was subjected to puberty blockers, cross-sex hormones, and a double mastectomy at the age of 13. Also see *Chloe Cole v Kaiser Foundation Hospitals, Inc*. filed in the California Superior Court for San Joaquin County, STK-CV-UMM-2023-0001612.

On May 1, 2025, the Department of Health and Human Services (HHS), released a report entitled Treatment for Pediatric Gender Dysphoria: Review of Evidence and Best Practices. ("the Review"): "HHS sent a letter to health care providers, risk managers, and state medical boards urging immediate updates to treatment protocols for minors with gender dysphoria based on HHS'

-10-

*comprehensive review that found puberty blockers, cross-sex hormones, and surgeries have very weak evidence of benefit, but carry risk of significant harms, including sterilization. Providers should no longer rely on discredited guidelines that promote these dangerous interventions for children and adolescents based on ideology, not evidence.* (Emphasis added)"

Also see Executive Order 14187, entitled "Protecting Children From Chemical and Surgical Mutilation", and Executive Order 14190, entitled "Ending Radical Indoctrination in K-12 Schooling."

*Amici curiae* physicians are very concerned that foundational medical principles such as the absolute requirement for informed consent in all cases, the Hippocratic Oath's "Do No Harm" mandate, and the strict observance of all applicable civil and criminal laws, have been trampled upon in recent years by the sudden onslaught of an aggressive "transgender ideology" activism. Ideological terminology divorced from biological reality, such as the "sex assigned at birth" and terms such as "being born into the wrong body" came into use.

In traditional medical practice, years of physical and psychological screening were required before any rare adult patient was approved for gender reassignment surgery. There were never any cases involving minor children.

-11-

Until very recently, all medical professionals agreed that under NO circumstances could a child consent to these treatments. That fact alone requires this Court to pause.

All over the world, countries have now halted their "gender" programs aimed at minors due to utter lack of benefit.

Thousands of international medical professionals and organizations have signed the Doctors Protecting Children Declaration4 and the members of Do No Harm Medicine.5 Numerous medical organizations vigorously oppose the medical mutilation of minors in the name of biased transgender ideology, to which the actions of Respondent could lead. Over 75,000 physicians and healthcare professionals in over sixty countries publicly support minor medical mutilation bans and have signed the Doctors Protecting Children Declaration.

Solid research now shows that the vast majority of children (85% +) will outgrow "gender dysphoria" within a few years. The clinical success in treating gender dysphoria with "Watchful Waiting and Exploratory Therapy" is explained by Dr. Hruz, M.D., Ph. D. in his Expert Declaration filed in *United States v. Skrmetti*, No. 23-477, 145 S.Ct. 1816 (2024). The clinical benefits of "Watchful Waiting" are reflected by the positive statistics.

-12-

For a more thorough examination of these issues see the AFLDS *amici curiae* brief filed in another secret transitions case, *Lavigne v. Great Salt Bay Community School Board*, (25-759), which can be viewed here. [3]

TX A.G. Op. No. KP-0401 opines that much of "transgender ideology," which promotes so-called "gender reassignment" surgery also violates Texas criminal laws prohibiting child abuse and sterilizations. TX AG Op. No. KP-0401 found that children lacked the capacity to consent to any such surgeries, and that the right to procreate has long been explicitly recognized as a fundamental constitutional right as far back as *Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942).

**CONCLUSION**

The decision below should be reversed.

---

[3] AFLDS *amici curiae* brief, *Lavigne v Great Salt Bay Community School Board*, (25-759), https://www.supremecourt.gov/DocketPDF/25/25-759/397095/20260223173636668_AFD-Lavigne%20Amici%20Brief-1.pdf

9

Respectfully submitted,

*s/David A. Dalia*
David A. Dalia
Counsel of Record
Attorney at Law
700 Camp Street
New Orleans, LA 70130
(504) 524-5541
davidadalia@gmail.com

Counsel for Amici Curiae,
America's Frontline Doctors and Dr.
Simone Gold, M.D., J.D.

## Certificate of Compliance

I hereby certify that the foregoing *Amici Curiae* Brief contains 2,588 words

as measured by Microsoft Word, and is fifteen pages long.

*s/ David A. Dalia*
**David A. Dalia**

-14-

**Certificate of Service**

I hereby certify that on the 13th day of <u>March</u>, 2026, a copy of the foregoing Motion for Leave was filed electronically with the Clerk of Court using the CM/ECF system, and notice of this filing was sent electronically to all counsel of record using the CM/ECF system.

 s/ *David A. Dalia*

**David A. Dalia**
