**No. 26-475**

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

AURORA REGINO,

*Plaintiff-Appellant*

v.

Superintendent GREG BLAKE, in his official capacity,

*Defendant-Appellee.*

_____

On Appeal from the United States District Court for the Eastern District of California, Sacramento

No. 2:23-cv-00032-DJC-DMC Hon. Daniel J. Calabretta

_____

### APPELLANT'S REPLY BRIEF

Joshua W. Dixon
Courtney Corbello
CENTER FOR AMERICAN LIBERTY
2145 14th Avenue, Suite 8
Vero Beach, FL 32960
(703) 687-6212
jdixon@libertycenter.org
ccorbello@libertycenter.org

*Attorneys for Appellant*
AURORA REGINO

**TABLE OF CONTENTS**

INTRODUCTION .......................................................................................................1

ARGUMENT ............................................................................................................1

I. PARENTS HAVE THE RIGHT TO CONSENT WHEN THE
STATE SOCIALLY TRANSITIONS THEIR CHILDREN AT
SCHOOL ....................................................................................................... 1

II. COERCION IS NOT A BAR TO MS. REGINO'S CLAIMS...................... 5

    A. Coercion is not required. ...................................................................... 6

    B. The Complaint alleges coercion........................................................... 8

III. MS. REGINO'S SUBSTANTIVE DUE PROCESS CLAIMS
COMPORT WITH *GLUCKSBERG*................................................................ 8

    A. The right at issue is encompassed within the preexisting
parental right. ...................................................................................... 9

    B. Ms. Regino satisfies *Glucksberg*..................................................... 11

IV. THE COMPLAINT PLAUSIBLY ALLEGES THAT SOCIAL
TRANSITIONING IS A FORM OF HEALTHCARE
TREATMENT FOR CHILDREN ................................................................ 12

V. THE "SHOCKS THE CONSCIENCE" STANDARD IS NOT
APPLICABLE ............................................................................................. 14

    A. The "shocks the conscience" standard applies only to
executive action.................................................................................. 14

    B. Strict scrutiny applies......................................................................... 17

VI. THE POLICY DOES NOT SATISFY SUBSTANTIVE
REVIEW ..................................................................................................... 18

    A. The District has no interest in socially transitioning every
child who asks to undergo a transition................................................ 18

    B. The District may not override parental consent without
providing adequate process................................................................. 19

C.    Children do not have a decisional privacy right to undergo a social transition in secret from their parents. ............................................. 21

D.    Children do not have an informational privacy right to undergo a social transition in secret from their parents. ........................... 23

E.    Creating a privacy right for children to keep secrets from their parents would harm children. ................................................................... 25

VII.   MS. REGINO'S PROCEDURAL DUE PROCESS CLAIMS ARE NOT PREDICATED ON A DEFICIENT LEGISLATIVE PROCESS ............................................................................................ 26

VIII.  THE POLICY IS FACIALLY INVALID ................................................. 27

CONCLUSION ................................................................................................. 29

## TABLE OF AUTHORITIES

**Cases**

*Alfonso v. Fernandez*,
195 A.D.2d 46 (N.Y. App. Div. 1993)..................................................................7

*Ams. for Prosp. Found. v. Bonta*,
594 U.S. 595 (2021) ...........................................................................................28

*Anspach v. City of Philadelphia*,
503 F.3d 256, 268 (3d Cir. 2007) .....................................................................6, 7

*Arnold v. Bd. of Educ. of Escambia Cnty.*,
880 F.2d 305 (11th Cir. 1989)..............................................................................6

*Bellotti v. Baird*,
443 U.S. 622 (1979) ...................................................................................... 21, 22

*Bi-Metallic Inv. Co. v. State Bd. Of Equalization*,
239 U.S. 441 (1915) ...........................................................................................27

*Brandt v. Griffin*,
147 F.4th 867 (8th Cir. 2025)...............................................................................9

*C.N. v. Wolf*,
No. SACV05868JVSMLGX,
2006 WL 8434249 (C.D. Cal. Nov. 1, 2006) .....................................................24

*Carey v. Population Servs. Int'l*,
431 U.S. 678 (1977) .............................................................................................7

*Cnty. of Sacramento v. Lewis*,
523 U.S. 833 (1998) ...................................................................................... 14, 15

*Cruzan v. Dir., Mo. Dep't of Health*,
497 U.S. 261 (1990) ...........................................................................................10

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ...........................................................................................11

*Dobbs v. Jackson Women's Health Organization*,
597 U.S. 215 (2022) .............................................................................. 10, 11, 21

*Doe v. Att'y Gen. of U.S.*,
    941 F.2d 780 (9th Cir. 1991) ............................................................25

*Edwards v. Aguillard*,
    482 U.S. 578 (1987) ..........................................................................8

*Foote v. Ludlow Sch. Comm.*,
    128 F.4th 336 (1st Cir. 2025) ................................................ 7, 15, 16

*Franz v. United States*,
    707 F.2d at 582 (D.C. Cir. 1983) ....................................................17

*Google LLC v. Oracle Am., Inc.*,
    593 U.S. 1 (2021) .............................................................................12

*Green v. Miss USA, LLC*,
    52 F.4th 773 (9th Cir. 2022) ...................................................... 18, 19

*Halverson v. Skagit Cnty.*,
    42 F.3d 1257 (9th Cir. 1994) ...........................................................27

*Hawkins v. Freeman*,
    195 F.3d 732 (4th Cir. 1999) ...........................................................15

*Hodgers-Durgin v. de la Vina*,
    199 F.3d 1037 (9th Cir. 1999) .........................................................16

*In re Crawford*,
    194 F.3d 954 (9th Cir. 1999) ...........................................................25

*Jensen v. Wagner*,
    603 F.3d 1182 (10th Cir. 2010) .........................................................4

*John & Jane Parents 1 v. Montgomery County Board of Education*,
    622 F. Supp. 3d 118, 130 (D. Md. 2022) .........................................23

*Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*,
    927 F.3d 396 (6th Cir. 2019) ...........................................................17

*Landerer v. Dover Area Sch. District*,
    No. 1:24-CV-00566,
    2025 WL 492002 (M.D. Pa. Feb. 13, 2025) ......................................8

iv

*Lane v. Pena,*
    518 U.S. 187 (1996) ...............................................................................25

*Lawrence v. Texas,*
    539 U.S. 558 (2003) ...............................................................................22

*Littlejohn v. School Board of Leon County,*
    132.F 4th. 1232 (11th. Cir. 2025)................................................... 15, 16

*Lopez-Valenzuela v. Arpaio,*
    770 F.3d 772 (9th Cir. 2014).................................................................29

*Loving v. Virginia,*
    388 U.S. 1 (1967) ..................................................................................22

*Mahmoud v. Taylor,*
    606 U.S. 522 (2025) .................................................................................6

*Mann v. Cnty. of San Diego,*
    907 F.3d 1154 (9th Cir. 2018)............................................................3, 4

*McKinney v. Pate,*
    20 F.3d 1550 (11th Cir. 1994).................................................... 15, 16

*Mirabelli v. Bonta,*
    146 S. Ct. 797 (2026) ............................................ 1, 2, 4, 5, 6, 9, 10, 13, 17, 20

*Moody v. NetChoice,*
    LLC, 603 U.S. 707 (2024) .....................................................................28

*Mueller v. Auker,*
    700 F.3d 1180 (9th Cir. 2012)............................................... 3, 18, 19

*N.Y. State Rifle & Pistol Ass'n v. Bruen,*
    597 U.S. 1 (2022) ..................................................................................11

*NASA v. Nelson,*
    562 U.S. 134 (2011) ...............................................................................23

*Nelson v. NASA,*
    530 F.3d 865 (9th Cir. 2008)................................................................24

*Nguon v. Wolf*,
   517 F. Supp. 2d 1177 (C.D. Cal. 2007)......................................................... 24, 25

*Nicholson v. City of L.A.*,
   935 F.3d 685 (9th Cir. 2019)............................................................................14

*NIH v. Am. Pub. Health Ass'n*,
   145 S. Ct. 2658 (2025) .....................................................................................2

*Nunez v. City of San Diego*,
   114 F.3d 935 (9th Cir. 1997)........................................................................3, 17

*Parham v. J.R.*,
   442 U.S. 584 (1979) ........................................................... 3, 5, 6, 10, 19

*Planned Parenthood of S. Ariz. v. Lawall*,
   307 F.3d 783 (9th Cir. 2002).........................................................................22

*Planned Parenthood v. Danforth*,
   428 U.S. 52 (1976) .........................................................................................21

*Pope v. Illinois*,
   481 U.S. 497 (1987) .......................................................................................22

*Regino v. Staley*,
   133 F.4th 951 (9th Cir. 2025)................................................... 15, 17, 28

*Smith v. City of Fontana*,
   818 F.2d 1411 (9th Cir. 1987).......................................................................16

*Stanley v. Illinois*,
   405 U.S. 645 (1972) .......................................................................................28

*Sterling v. Borough of Minersville*,
   232 F.3d 190 (3d Cir. 2000)...........................................................................24

*Stormans, Inc. v. Wiesman*,
   794 F.3d 1064 (9th Cir. 2015)........................................................................15

*Troxel v. Granville*,
   530 U.S. 57 (2000) ................................................... 3, 4, 6, 16, 17, 19

vi

*Trump v. Boyle*,
  145 S. Ct. 2653 (2025) ........................................................................1

*Washington v. Glucksberg*,
  521 U.S. 702 (1997) ................................................... 8, 12, 17

**Statutes**

Cal. Educ. Code § 33479.3 ....................................................7

Cal. Educ. Code § 48980 ........................................................7

Cal. Educ. Code § 49423 ........................................................7

Cal. Educ. Code § 49451 ........................................................7

Cal. Educ. Code § 49475 ........................................................7

Cal. Educ. Code § 49476 ........................................................7

Cal. Educ. Code § 51938 ........................................................7

Cal. Fam. Code § 302 ...................................................... 22, 26

Cal. Fam. Code § 6925(b)(1) ................................................26

Cal. Penal Code § 261.5 .......................................................22

Cal. Penal Code § 313.1 .......................................................22

Cal. Penal Code § 652(a) ....................................................26

Cal. Veh. Code § 17701 ......................................................26

**INTRODUCTION**

The District claims authority to facilitate children's social transition while excluding their parents. But as the Supreme Court recently confirmed in *Mirabelli v. Bonta*, "parents"—not schools—are "the primary protectors of children's best interests." 146 S. Ct. 797, 802 (2026). The Constitution prohibits schools from facilitating children's social transition without parental consent.

Parents' rights are not absolute, but the Policy does not validly override them. The District identifies no interest in socially transitioning every child who asks. The Policy presumes that parents are abusive without providing them an individualized determination or adequate process. And the Policy is predicated on a child-privacy theory that has no basis in law. The Court should REVERSE and REMAND.

**ARGUMENT**

**I.    PARENTS HAVE THE RIGHT TO CONSENT WHEN THE STATE SOCIALLY TRANSITIONS THEIR CHILDREN AT SCHOOL**

In *Mirabelli*, the Supreme Court concluded that the Constitution likely protects parents' right against the "unconsented facilitation of [their] child's gender transition" at school. 146 S. Ct. at 802; *see also id.* at 803. Under *Mirabelli*, Ms. Regino's Complaint states plausible claims.

While the Supreme Court's interim docket decisions are "not conclusive," they nevertheless "inform" how lower courts should rule "in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025); *see also NIH v. Am. Pub. Health Ass'n*, 145 S.

1

Ct. 2658, 2663 (2025) (noting that interim docket decisions have "precedential weight" (quotations omitted)) (Gorsuch, J., concurring in part and dissenting in part). This case and *Mirabelli* are "like cases." Here, like there, the Policy authorizes schools to facilitate children's social transition without parental consent or notice and while concealing the transition from parents. And while *Mirabelli* concluded that the parents there were "likely to succeed on the merits," *id.* at 803, the legal standard here is far less demanding. Ms. Regino need only plead plausible claims. The Complaint meets that standard.

In its Response Brief, the District did not mention *Mirabelli*. The State of California, however, filed an Amicus Brief arguing that *Mirabelli* is more limited than it appears. According to California, *Mirabelli* does not mean that parents have the right to *consent* when the state socially transitions their children at school. Instead, California contends that parents only have the right to "participat[e]" in that decision. Amicus Br. Supp. Appellee (Dkt. 33.1) ("CA Br.") at 7–8 (quoting *Mirabelli*, 146 S. Ct. at 803). California does not explain what it thinks the right to "participate" in a decision means, except to suggest it is something less than the right to consent. *Id.* Whatever the explanation, California's cramped interpretation of parents' rights is too circumscribed.

At its core, the parental right protects parents' decision-making authority over their children. Under the Constitution, parents play the "primary role" in their

2

children's upbringing. *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality op.). In that role, parents have the right to "make decisions" regarding their children's "care, custody, and control." *Id.* This includes the right to "consent" to healthcare treatment the state seeks to provide their children. *Mann v. Cnty. of San Diego*, 907 F.3d 1154, 1161–62 (9th Cir. 2018). The state must give "deference" to parents' decisions, presuming, "in the first instance," that parents are fit and that their decisions are in their children's best interests. *Troxel*, 530 U.S. at 67, 70; *see also Parham v. J.R.*, 442 U.S. 584, 602 (1979).

While decision-making authority over children "reside[s] first" in their parents, *Troxel*, 530 U.S. at 65, that authority is "not absolute," *Nunez v. City of San Diego*, 114 F.3d 935, 952 (9th Cir. 1997). The state may, exercising its *parens patriae* power, override parents' rights so long as it satisfies strict scrutiny. *Id.* And under strict scrutiny, when the state seeks to override fit parents' right to consent to their children's healthcare treatment in the absence of an emergency, the state must prove to a judge that the child is subject to "danger or harm" unless the treatment is provided. *Mueller v. Auker*, 700 F.3d 1180, 1186 (9th Cir. 2012) ("*Mueller II*"); *see also Parham*, 442 U.S. at 603 (noting that the state may override fit parents'

3

decisions when the child's "health is jeopardized"); *Jensen v. Wagner*, 603 F.3d 1182, 1198 (10th Cir. 2010) (similar).[1]

California's argument that parents have only the right to "participate" in their children's healthcare decisions interprets the parental right too narrowly. Parents do not exercise their constitutional rights by committee with the state. Instead, parents have the right to "make decisions" regarding their children's healthcare, *Troxel*, 530 U.S. at 66, which includes the right to "consent" to healthcare treatment the state seeks to provide, *Mann*, 907 F.3d at 1161–62. That decision belongs to parents "in the first instance," *Troxel*, 530 U.S. at 70, and the state may override parents' failure to consent only with "judicial authorization," *Mann*, 907 F.3d at 1161, pursuant to an adequate showing.

*Mirabelli*'s statement that the parental right "includes the right not to be shut out of participation in decisions regarding their children's mental health," 146 S. Ct. at 803, does not announce a new ceiling on parental rights. Instead, that statement simply recognizes that the policies at issue there not only violated parents' right to consent but *also* "conceal[ed]" important information from parents. *Id.* Indeed, *Mirabelli* supported its statement with a citation to *Parham*, which, like *Troxel*,

---

[1] Both California and the District assert that Ms. Regino lacks the "unqualified . . . right to unilaterally" make decisions "regarding [her] children's mental health." CA Br. at 8; *see also* Resp. Br. at 45 (similar). But Ms. Regino has never asserted that her parental rights are unqualified or unilateral. Rather, she asserts that the Policy does not validly override her rights. *See* Op. Br. at 40–51.

concluded that "parents[]" have the "authority to *decide* what is best for the child," absent a sufficient countervailing showing by the state. 442 U.S. at 604 (emphasis added). Moreover, as *Mirabelli* elsewhere explained, the constitutional problem there was the "*unconsented* facilitation of a child's gender transition." *Id*. at 802 (emphasis added). Accordingly, *Mirabelli* does not restrict parents' right to a right of mere participation.

Even if parents were entitled only to some lesser right of mere participation, the Policy violates that right. The right to participate in a decision includes the right to be informed that the decision is occurring. Parents cannot participate in a decision that they do not know is being made. Because the Policy does not require the District to notify Ms. Regino that it is facilitating the social transition of her children, it violates her parental rights even on California's constrained view. *See* Op. Br. at 32–33.[2]

## II.   COERCION IS NOT A BAR TO MS. REGINO'S CLAIMS

The District argues that the Policy does not violate Ms. Regino's parental rights because it does not "coerce" children. Resp. Br. at 24. That is wrong. Coercion is not required to state a parental rights claim, and the Complaint alleges coercion in any event.

---

[2] At a bare minimum, parents' right to participate in a decision means that the decision may not be concealed from them. *See* Op. Br. at 33–35. The Policy fails even this baseline requirement.

### A. Coercion is not required.

While coercion is sufficient to give rise to a parental rights claim, *see Arnold v. Bd. of Educ. of Escambia Cnty.*, 880 F.2d 305, 312–13 (11th Cir. 1989), it is not necessary. The Supreme Court has expressly concluded that coercion is not necessary in the free exercise context. *See Mahmoud v. Taylor*, 606 U.S. 522, 548–55 (2025) (concluding that Free Exercise Clause forbids laws that "burden" parents' religious exercise). The same rule applies to all parental rights claims, regardless of their constitutional source. *See, e.g.*, *Troxel*, 530 U.S. at 65 (concluding that Due Process Clause protects parents' "decisions" without reference to coercion). The violation occurs when the state usurps parental decision-making, regardless of whether the state coerces the child. *Id*.; *see also Mirabelli*, 146 S. Ct. at 803 (similar); *Parham*, 442 U.S. at 603 (similar).

The District cites *Anspach v. City of Philadelphia*, which held that parents have no right to be notified of their children's "voluntary decision[]" to obtain contraceptives from a state-run health clinic. 503 F.3d 256, 268 (3d Cir. 2007). *Anspach* is distinguishable.

First, this case arises in the school setting, where student attendance is compulsory and where the state has physical custody and control over children. *See* Cal. Educ. Code § 48200. State-run health clinics, by contrast, do not "require attendance or exercise authority over [their] visitors." *Anspach*, 503 F.3d at 271; *see*

6

*also Alfonso v. Fernandez*, 195 A.D.2d 46, 57–59 (N.Y. App. Div. 1993) (holding invalid school-based condom distribution program that did not require parental consent.

Second, children have a constitutionally protected privacy right to obtain contraceptives without parental consent or notice. *Anspach*, 503 F.3d at 263, 271 (discussing *Carey v. Population Servs. Int'l*, 431 U.S. 678 (1977) (plurality op.)). Children do not have such rights regarding their social transition at school. *See* Op. Br. at 46–48; *see also infra* at 21–26.

Third, unlike schools, health clinics do not have ongoing relationships with parents in which it is practical to obtain parental consent. The District already requires parental consent and / or notice for a host of school-based activities, like organized sports, physical examinations, sexual health education, and the distribution of medication. *See* Cal. Educ. Code §§ 33479.3, 48980, 49423, 49451, 49475–76, 51938.

Fourth, the health clinic in *Anspach* did not engage in parental concealment. Instead, it merely failed to notify the child's parents about the services it provided her. 503 F.3d at 267. Here, the Policy requires schools to conceal children's social transition from their parents, which is an unlawfully "restraining act." *Foote v. Ludlow Sch. Comm.*, 128 F.4th 336, 353 (1st Cir. 2025).

7

The District's and California's related contention that the parental right "only bars state action, not inaction" is also meritless. Resp. Br. at 45–48; *see also* CA Br. at 8. Under the Policy, the District is required to honor children's request to undergo a social transition without obtaining parental consent. The District is not merely failing to inform parents of *their children's* acts. Rather, *the District* itself is facilitating children's social transitions at school. This act—and not mere inaction—violates Ms. Regino's parental rights. *See* Op. Br. at 33.

## B. The Complaint alleges coercion.

Even if parents were required to allege coercion, the Complaint does so. True, the Policy does not coerce children to undergo a social transition. Once a transition is undertaken, however, it exerts reinforcing psychological pressure on the child, an effect A.S. felt. ER-118 (¶36); ER-126 (¶76). By creating an environment in which a child's transgender identity is affirmed—including by teacher "role models" and "pressure" from the child's peers, *Edwards v. Aguillard*, 482 U.S. 578, 584 (1987)—the Policy is inherently coercive, *see Landerer v. Dover Area Sch. Dist.*, No. 1:24-CV-00566, 2025 WL 492002, at *10 (M.D. Pa. Feb. 13, 2025).

## III. MS. REGINO'S SUBSTANTIVE DUE PROCESS CLAIMS COMPORT WITH *GLUCKSBERG*

The District argues that Ms. Regino's substantive due process claims fail under *Washington v. Glucksberg*, 521 U.S. 702 (1997). Resp. Br. at 39–45. But the right Ms. Regino advances is encompassed within the preexisting parental right, so

a full *Glucksberg* analysis is not necessary. Moreover, Ms. Regino satisfies *Glucksberg* in any event.

**A. The right at issue is encompassed within the preexisting parental right.**

In *Mirabelli*, the Supreme Court confirmed that its "long-established precedents" mean that parents have the right to consent when the state facilitates children's "gender transitioning during school hours." 146 S. Ct. at 803; *see also id.* at 804 (concluding that outcome was "dictated by existing law") (Barrett, J., concurring). Because this right is encompassed within the Supreme Court's preexisting parental rights precedents, Ms. Regino is not required to re-establish that it exists under *Glucksberg*. *See also* Op. Br. at 37–38.

The District relies on *Brandt v. Griffin*, which held that parents have no right to provide their children medical treatment the state has deemed harmful. 147 F.4th 867, 884–888 (8th Cir. 2025) (en banc). In arriving at this holding, the court noted the long history and tradition of states regulating the practice of medicine within their borders. *Id.*

Here, Ms. Regino does not assert the right to *provide* healthcare treatment to her children. Rather, she asserts the right to *consent* when the state provides her children treatment. Unlike *Brandt*, there is no history and tradition of states providing healthcare treatment to unwilling recipients. *See Cruzan v. Dir., Mo. Dep't*

9

*of Health*, 497 U.S. 261, 270 (1990) (noting the "right . . . to refuse treatment" the state provides). *Brandt* does not apply.

The District also contends that *Dobbs v. Jackson Women's Health Organization* means that courts must conduct a full *Glucksberg* analysis whenever a party asserts a right that is not identical—in microscopic "granularity," Resp. Br. at 40—to a previously recognized right. That misreads *Dobbs*. Under *Dobbs*, lower courts must exercise caution when interpreting broad formulations of substantive due process rights, like the rights to "privacy," to "make intimate and personal choices," and to "define one's concept of existence." 597 U.S. 215, 255 (2022) (quotations omitted). Allowing courts to interpolate general principles within these broad formulations gives judges too much discretion to engage in "freewheeling judicial policymaking." *Id.* at 240.

Here, however, parents' right to consent when the state seeks to socially transition their children is encompassed within parents' right to make "decisions regarding their children's mental health." *Mirabelli*, 146 S. Ct. at 803 (citing *Parham*, 442 U.S. at 602). This formulation of the right is sufficiently narrow to cabin judicial discretion while avoiding the overly formalistic granularity that would deny courts the flexibility to respond to new ways in which the state may unlawfully interfere with the family. *See* Op. Br. at 37–38.

### B. Ms. Regino satisfies *Glucksberg*.

Even if a full *Glucksberg* analysis were required, Ms. Regino satisfies it. Under our Nation's history and tradition, public schools' implied authority under the *in loco parentis* doctrine has always been limited to the purpose for which schools were established: to educate children. The decision to socially transition a child is not within the scope of that implied delegation of parental power. Parents hand their children off to public schools to be taught, not for schools to facilitate significant psychological interventions like a social transition without parental consent. Op. Br. at 25–26, 38–40; *see also* Amicus Br. Supp. Appellant (Dkt. 23.1) at 7–19.

The District contends that when considering history and tradition, "the stories of the twentieth and twenty-first centuries are as relevant as those of the eighteenth" and nineteenth centuries. Resp. Br. at 43. Not so. "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them[.]" *District of Columbia v. Heller*, 554 U.S. 570, 634–35 (2008); *see also Dobbs*, 597 U.S. at 231 (similar). True, post-enactment "practice can liquidate and settle the meaning of [ambiguities] in the Constitution." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 35 (2022) (quotations omitted). This principle, however, applies only to those practices that have been "open, widespread, and unchallenged since the early days of the Republic." *Id.* Public schools did not begin socially transitioning students without parental consent until sometime in the last twenty

11

years. *See* Op. Br. at 26. A practice of this recent vintage cannot liquidate the substantive Due Process Clause.

The District also argues that the Complaint does not allege any history relevant to the *Glucksberg* inquiry. But the Complaint sets forth this history explicitly. *See* ER-136 (¶121). More important, whether an asserted right is protected by the Constitution is not an adjudicative fact that must be alleged and proven to a jury. Instead, it is a question of law for the Court to decide. *See, e.g.*, *Glucksberg*, 521 U.S. at 710–36; *see also Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 24 (2021) (noting that a question of law involves "legal work"). And the answer is clear: parents have the right to consent—or at least to notice—when the state socially transitions their children at school.

## IV. THE COMPLAINT PLAUSIBLY ALLEGES THAT SOCIAL TRANSITIONING IS A FORM OF HEALTHCARE TREATMENT FOR CHILDREN

The District contends that the social transitions contemplated under the Policy are not psychological treatment in every case, pointing out that some children who ask to be transitioned may not meet the threshold of distress necessary for a gender dysphoria diagnosis. Resp. Br. at 48–53. But the District admits that social transitioning "*can . . . be*" a form of psychological treatment. Resp. Br. at 51 (emphasis in original). And the District does not dispute the Complaint's allegation that children who ask to undergo a social transition are necessarily experiencing

12

psychological distress associated with the use of their given names and sex-associated pronouns. ER-117–18 (¶¶32–34); *see also Mirabelli*, 146 S. Ct. at 803 (noting that a child who requests a social transition "exhibits symptoms of gender dysphoria"). For this reason, socially transitioning a child who asks constitutes treatment in every case. Psychological distress need not rise to the level of a diagnosable condition to be treated. *See also* Op. Br. at 20.

The District's attempt to analogize social transitioning to getting a child a pet fails. A social transition constitutes a significant change to a child's self-understanding and outward expression of their gender, and it can change the child's gender outcomes, potentially leading to a life of medicalization. ER-117–19 (¶¶32–37); *see also* ER-153–60. Getting a child a pet is not remotely comparable.

Even if social transitioning were not psychological treatment, the decision to socially transition a child has a direct bearing on the "[child]'s mental health." *Mirabelli*, 146 S. Ct. at 803. That decision is thus sufficiently tied to children's healthcare that it falls within the parental right in every case. *Id.* ; *see also* Op. Br. at 23–31.

California argues that the parental right "will not be implicated every time a student expresses a transgender . . . identity" at school. Ms. Regino has never argued otherwise. Op. Br. at 32. Instead, Ms. Regino argues that the District may not socially transition children without parental consent (or notice). *Id.* California's

parade of horribles regarding clothing, dances, and school administration generally, CA Br. at 11–12, is therefore inapt. In those examples, schools are not facilitating a treatment decision that directly implicates a child's mental health.[3]

## V. THE "SHOCKS THE CONSCIENCE" STANDARD IS NOT APPLICABLE

The District contends that the "shocks the conscience" standard applies to Ms. Regino's as-applied substantive due process claim. Resp. Br. at 53–56. That is wrong. Strict scrutiny applies.[4]

### A. The "shocks the conscience" standard applies only to executive action.

The "shocks the conscience" standard imposes a mental state requirement. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *see also Nicholson v. City of L.A.*, 935 F.3d 685, 693 (9th Cir. 2019). It applies in substantive due process cases involving arbitrary "executive" action, like high-speed police chases and police use-of-force cases. *Lewis*, 523 U.S. at 846; *Nicholson*, 935 F.3d at 693.

---

[3] The California Teachers Association, *et al.* (the "CTA"), argues that social transitioning is not "medical" treatment. Amicus Br. Supp. Appellee (Dkt. 34.2) at 8–13 ("CTA Br."). This argument is mere wordplay. Ms. Regino does not contend that social transitioning is *medical* treatment, like a drug or surgery would be. Instead, her position is that social transitioning is a significant form of *psychological* treatment that implicates the parental right.

[4] The District admits that the "shocks the conscience" standard does not apply to Ms. Regino's facial substantive due process claim, Resp. Br. at 37–39, and it does not contend that the "shocks the conscience" standard applies to any of Ms. Regino's other claims. Thus, the District's argument is limited to Ms. Regino's as-applied substantive due process claim only.

The "shocks the conscience" standard does not apply to "legislative" action, *Lewis*, 523 U.S. at 846—like a statute, ordinance, regulation, or other governmental "policy"—that allegedly violates the plaintiff's fundamental rights, *Mann*, 907 F.3d at 1164; *see also Hawkins v. Freeman*, 195 F.3d 732, 738–39 (4th Cir. 1999) (explaining executive and legislative action); *McKinney v. Pate*, 20 F.3d 1550, 1557 n.9 (11th Cir. 1994) (same), *abrogated on other grounds as described in Littlejohn v. Sch. Bd. of Leon Cnty.*, 132 F.4th 1232, 1242 (11th Cir. 2025). In cases involving legislative action, the "fundamental rights standard" applies. *Regino v. Staley*, 133 F.4th 951, 960 n.5 (9th Cir. 2025) (quotations omitted). Under the "fundamental rights standard," the Court asks whether the enactment infringes the plaintiff's fundamental rights and, if so, whether it complies with strict scrutiny. *Id.* at 960; *see also Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1085 (9th Cir. 2015) (same).

Here, Ms. Regino seeks prospective relief—and, to date, only prospective relief—against a school district's administrative regulation that she contends infringes her fundamental parental rights. ER-139–40. This challenges legislative action, rendering the "shocks the conscience" standard inapplicable. *Lewis*, 523 U.S. at 846; *Mann*, 907 F.3d at 1163–64. Indeed, this Court has already concluded that the fundamental rights standard applies here. *Regino*, 133 F.4th at 960 n.5; *see also Foote*, 128 F.4th at 346 (holding same in challenge to similar policy).

15

The District invokes *Littlejohn*, where the court concluded that the "shocks the conscience" standard applied. 132 F.4th at 1242. The parents there, however, sought damages, and they expressly "waived any general challenge" to the policy at issue. *Id.* Here, by contrast, Ms. Regino seeks only prospective relief, and she has not waived her general challenge to the Policy.[5]

The District's related suggestion that the state only interferes with parents' rights when motivated by the "purpose[] of oppression," Resp. Br. at 26 (quotations omitted), is also wrong. As this Court has held, parents need not allege that the state was "trying to break up their family" to state a parental rights claim. *Smith v. City of Fontana*, 818 F.2d 1411, 1420 n.12 (9th Cir. 1987), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999). Instead, the question is whether the state action usurps parents' decisional authority. *Id.*; *see also Troxel*, 530 U.S. at 69 (concluding judicial visitation order violated parental right without requiring oppressive purpose). The Policy does so.

---

[5] Even if Ms. Regino were seeking damages, the fundamental rights standard would apply. Any damages Ms. Regino suffered were caused by the District's application of the Policy, not the one-off acts of executive officials. *Mann*, 907 F.3d at 1163–64; *see also Foote*, 128 F.4th at 345 (noting that governmental employees' acts are "legislative" if undertaken "pursuant to broad governmental policies") (quotations omitted); *McKinney*, 20 F.3d at 1557 n.9 (similar).

16

## B. Strict scrutiny applies.

California points out that "the Supreme Court has not identified strict scrutiny as the appropriate standard" for substantive due process parental rights claims. CA Br. at 7 n.2. But the parental right is a "fundamental right," and infringements of fundamental rights are subject to strict scrutiny. *Glucksberg*, 521 U.S. at 720–21; *see also Troxel*, 530 U.S. at 80 (concluding that strict scrutiny applies) (Thomas, J., concurring). True, *Mirabelli* did not expressly state that it was applying strict scrutiny to the parents' due process claims. The Supreme Court, however, applied strict scrutiny to the parents' free exercise claim, 146 S. Ct. at 802, and it arrived at "[t]he same" conclusion under their due process claim, *id.* at 803. There is no reason to think the Supreme Court applied different standards to the two claims. *Id.*; *see also id.* at 804 (noting that violations of the parental right are subject to "heightened scrutiny") (Barrett, J., concurring).

In any event, as California acknowledges, this Court has already concluded that strict scrutiny applies to infringements of the parental right. CA Br. at 6 (citing *Regino*, 133 F.4th at 962); *see also Nunez*, 114 F.3d at 952. Other Circuits agree. *See Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 420 (6th Cir. 2019); *Gruenke v. Seip*, 225 F.3d 290, 305 (3d Cir. 2000); *Arnold*, 880 F.2d at 313; *Franz v. United States*, 707 F.2d 582, 602 (D.C. Cir. 1983). And this Court has explained how strict scrutiny works when the state seeks to override parents' right

17

to consent to healthcare treatment the state provides their children. *Mueller II*, 700 F.3d at 1187. Circuit precedent requires application of that standard.

## VI.   THE POLICY DOES NOT SATISFY SUBSTANTIVE REVIEW

While strict scrutiny applies, the Policy fails even rational basis review. *See* Op. Br. at 41–48. The District's and California's arguments otherwise lack merit.

### A. The District has no interest in socially transitioning every child who asks to undergo a transition.

The District never identifies what interest it has in socially transitioning every child who asks. Instead, the District argues that children have a privacy right to keep their transition secret from their parents. Resp. Br. at 33–37. But that alleged interest only comes into existence *after* the transition has begun. Because the District never explains its interest in transitioning children in the first place, the Policy fails rational basis review without further analysis.

California argues that socially transitioning every child who asks advances schools' interest in "combatting discrimination, protecting the well-being of students, and fostering a learning environment." CA Br. at 14. California admits, however, that whether the Policy satisfies substantive review is a "fact-specific inquiry" that is not susceptible to categorical determination. *Id.* And under this Court's precedent, the issue is not the state's asserted interest in "enforcing its non-discrimination policies *generally*." *Green v. Miss USA, LLC*, 52 F.4th 773, 791–92 (9th Cir. 2022) (emphasis added). Rather, the Court must ask "whether [the state]

18

has . . . an interest" in preventing discrimination with respect to *each child* who asks to undergo a transition. *Id.*; *see also Mueller II*, 700 F.3d at 1187.

As the Complaint alleges, a social transition is not beneficial for every child who asks. *See* Op. Br. at 42–44. Indeed, for some children, transitioning is harmful. *Id.* Accordingly, unless the District proves to a judge that a specific child is at risk of harm if not transitioned, fit parents' decision that the child should not undergo a transition defeats any interest the District might have in transitioning that child. Because the Policy does not require such proof, it fails.

**B. The District may not override parental consent without providing adequate process.**

California also argues that schools may conceal social transitions from allegedly abusive parents. CA Br. at 9. But the Policy requires concealment from *all* parents unless the child authorizes disclosure, not just those who are allegedly abusive. The Policy is thus irrationally overbroad.

Moreover, California's argument ignores parents' procedural due process rights. The state obviously may protect children from abusive parents. In doing so, however, the state must presume that all parents are fit in the first instance. *Troxel*, 530 U.S. at 68; *see also Parham*, 442 U.S. at 602. The issue, therefore, is how the state determines that parents are abusive.

California suggests that schools may make this determination on their own. That is incorrect. Absent an emergency, the state must prove to a judge—with notice

19

to the parents and an opportunity to be heard—that parents are abusive before overriding their parental rights. *See* Op. Br. at 44–46, 50. Allowing schools to decide, on their own, that parents are abusive violates parents' due process rights. *Id.* The District may—and sometimes must—report parents it suspects are abusive to Child Protective Services, but it may not override parents' right to consent based on its own determination of abusiveness without providing them these procedural protections. *Id.* at 45.

Once the state proves to a judge at a hearing compliant with due process that specific parents are abusive, the state may transition that child without parental consent or notice. *See Mirabelli*, 146 S. Ct. at 803. In fact, the state may even "remov[e] [the child] from parental custody" in that situation. *Id.* Absent an emergency, however, the state may not override parents' right to consent without providing them these procedural protections.

California's suggestion, CA Br. at 14, that parents necessarily engage in abuse by failing to consent when their child asks to undergo a social transition is also wrong. That suggestion stretches the meaning of the term "abuse" far beyond what it reasonably can bear. *See Mirabelli*, 146 S. Ct. at 802 (implying that not consenting to a child's "gender transition" can be a permissible parental decision). As the Complaint alleges, "it can be—and often is—appropriate for parents to say 'no' to a [child's] social transition." ER-119 (¶39). California may think it is appropriate to

20

take children from loving parents simply because the parents say "no," but the Constitution prohibits that unwarranted state interference with the family.

## C. Children do not have a decisional privacy right to undergo a social transition in secret from their parents.

The District argues that children have a decisional privacy right to keep their social transition secret from their parents. Resp. Br. at 33–35. This argument fails.

The District tries to shoehorn this case into the line of cases—beginning with *Planned Parenthood v. Danforth*, 428 U.S. 52 (1976)—holding that so-called "mature" minors have a decisional privacy right to obtain an abortion absent parental consent. *Id.* But *Dobbs* overruled the *Danforth* line of cases. If, as *Dobbs* holds, "the Constitution does not confer a right to abortion," 597 U.S. at 292, it follows that children have no right to have an abortion without parental consent.

Even if the *Danforth* line of cases were still good law, those cases are inapplicable to social transitioning. The reasoning of those cases turned on the unique nature of abortion. Specifically, absent mishap, a pregnant child will give birth "in a matter of weeks," at which point her ability to have an abortion will be lost forever. *Bellotti v. Baird*, 443 U.S. 622, 642 (1979) (plurality op.). The same is not true of other life choices—including social transitioning—which children can decide for themselves when they become adults. *Id.* (observing that, for most legal restrictions on a child's choices, the child is "required simply to postpone [the] decision" until adulthood).

21

The law is replete with examples of this principle. Adults have the constitutional rights to marry, to engage in consensual sexual relations, and to view indecent material, for example. *Loving v. Virginia*, 388 U.S. 1 (1967); *Lawrence v. Texas*, 539 U.S. 558 (2003); *Pope v. Illinois*, 481 U.S. 497 (1987). Yet states, including California, routinely restrict children from engaging in these activities. Cal. Family Code § 302 (requiring parental consent and court order for child to marry); Cal. Penal Code § 261.5 (restricting sexual intercourse with child); Cal. Penal Code § 313.1 (prohibiting distribution of indecent material to children). Due to children's "vulnerability," immaturity, and "the importance of the parental role in child rearing," children's constitutional rights "cannot be equated with those of adults." *Bellotti*, 443 U.S. at 634. For this reason, the Supreme Court has never extended *Danforth* outside the abortion context.

The *Danforth* line cases also would not help the District even if those cases applied. Under those cases, a child had the right to bypass her parents' consent only when she showed to a judge either that (1) "she possesse[d] the maturity and information to make her abortion decision" or (2) the abortion would be "in her best interests." *Planned Parenthood of S. Ariz. v. Lawall*, 307 F.3d 783, 789–90 (9th Cir. 2002). The Policy does not require either of these showings. Instead, it applies to all children—even children as young as five years old—so long as their request is sincere.

22

### D. Children do not have an informational privacy right to undergo a social transition in secret from their parents.

The District also argues that children have an informational privacy right to undergo a social transition in secret from their parents. Resp. Br. at 36–37. This argument fares no better. Children may have an informational privacy right to keep their social transition secret from *third parties* in certain situations. But they have no right to keep that information secret from *their parents*.

The Supreme Court has never held that the Constitution protects informational privacy. *See, e.g.*, *NASA v. Nelson*, 562 U.S. 134, 138 (2011) (assuming without deciding right exists). Even if it does—as this Court has held—the plaintiff must have a legitimate expectation of privacy in the information at issue. *See* Op. Br. at 47–48. Children who are undergoing a social transition at school do not have such an expectation. *Id.* The District cites *John & Jane Parents 1 v. Montgomery County Board of Education*, but the court there did not hold that *children* have a privacy right to keep secrets from their parents. Instead, the court held that *parents* did not have the "right to be . . . informed of their child's gender identity." 622 F. Supp. 3d 118, 130 (D. Md. 2022), *vacated on other grounds*, 78 F.4th 622 (4th Cir. 2023). And for reasons already explained, that holding is erroneous.

The District argues that children have a right to keep their "sexual orientation" secret from their parents. Resp. Br. at 37. The cases the District cites, however, do not support that proposition. In *Sterling v. Borough of Minersville*, the court held

23

that an *adult* had a privacy right to keep his sexual orientation secret from his grandfather. 232 F.3d 190, 192 (3d Cir. 2000). In *Nelson v. NASA*, this Court noted that *adults* have the right to keep their sexual activity secret from their employer. 530 F.3d 865, 877 (9th Cir. 2008), *reversed on other grounds by* 562 U.S. 134. Neither case involved children.

The District's best case is *Nguon v. Wolf*, where the court concluded that a minor child had a privacy right to keep her sexual orientation secret from her parents. 517 F. Supp. 2d 1177, 1191 (C.D. Cal. 2007); *see also C.N. v. Wolf*, No. SACV05868JVSMLGX, 2006 WL 8434249, at *9 (C.D. Cal. Nov. 1, 2006). But *Nguon* is deeply flawed. The court did not evaluate whether the right it was creating was grounded in history and tradition. 2006 WL 8434249, at *8–9. The court uncritically extended *Sterling* to apply to children. *Id.* at *9. The court did not consider the parents' interests. *Id*9. And the court concluded that the child had a legitimate expectation of privacy in what happened at school because her parents were immigrants who spoke poor English. 517 F. Supp. 2d at 1191. These analytic shortcomings defeat any persuasive value *Nguon* might have.

*Nguon* is distinguishable in any event. The court there concluded that the child had a legitimate expectation of privacy because she had "come out" to only "five friends." *Id.* Here, as discussed, a social transition occurs throughout the school environment, defeating any legitimate expectation of privacy.

24

In addition, information about a child's sexual orientation is vastly different from information that a child is undergoing a social transition. In determining whether information is protected, the Court must evaluate the nature of the information, whether there is a countervailing "interest" in disclosure, and the "degree of need for access." *In re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999) (quotations omitted). The serious and potentially harmful consequences of social transitions in children cry out for parental disclosure, not secrecy. Indeed, the Court in *Nguon* ultimately concluded that the school permissibly disclosed the child's sexual orientation to her parents because the disclosure occurred "in the context of [school] discipline" against the child. 517 F. Supp. 2d at 1195. The justifications for involving parents in their children's social transition are far more substantial.

### E. Creating a privacy right for children to keep secrets from their parents would harm children.

A holding that children have a privacy right to keep their social transition secret from their parents would have implications far beyond this case. This Court has held, for example, that adults have informational privacy rights to their "medical information." *Doe v. Att'y Gen. of U.S.*, 941 F.2d 780, 795 (9th Cir. 1991), *disapproved on other grounds by Lane v. Pena*, 518 U.S. 187 (1996). If children have the right to keep their "medical information" secret from their parents—and under the District's logic there is no reason they would not—then children would be constitutionally empowered to direct their own healthcare. Such a result would not

25

only contradict centuries of history and tradition, but it would also saddle children with the potentially lifelong consequences of their own immature choices.

Moreover, in California alone, numerous statutes require parental consent before children may engage in certain activities. *See, e.g.*, Cal. Fam. Code § 302 (marriage); Cal. Fam. Code § 6925(b)(1) (sterilization); Cal. Penal Code § 652(a) (body piercing); Cal. Veh. Code § 17701 (driver's license). If children have privacy rights vis-à-vis their parents, all these statutes—and the important role they play in protecting children from their own rash decisions—would be imperiled.

No court has ever held that children have privacy rights to keep the fact they are undergoing a social transition at school secret from their parents. This Court should not be the first.[6]

## VII.  MS. REGINO'S PROCEDURAL DUE PROCESS CLAIMS ARE NOT PREDICATED ON A DEFICIENT LEGISLATIVE PROCESS

The District contends that Ms. Regino has no procedural rights when her children are socially transitioned because it adopted the Policy under "the standard, regulation-making process." Resp. Br. at 57. This contention misconstrues Ms. Regino's procedural due process claims.

---

[6] Contrary to the CTA's argument, CTA Br. at 15–16, the statements by the National Association of School Psychologists and the American Psychological Association acknowledge only that children generally have a privacy right to keep their gender identity secret from third parties. They do not state that children have a privacy right to keep the fact they are undergoing a social transition at school secret from their parents.

It is true that the government need not provide individuals notice and an opportunity to be heard before "adopt[ing]" generally applicable laws in the normal course. *See Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445–46 (1915); *see also Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1260 (9th Cir. 1994), *as amended on denial of reh'g* (Feb. 9, 1995). But Ms. Regino does not contend that the District *adopted* the Policy in a procedurally defective manner. Rather, she alleges that the Policy's adjudicatory framework *itself* is procedurally deficient. ER-138–39 (¶¶135–45). Specifically, the Policy authorizes the District to socially transition her children upon their request without providing her notice and an opportunity to be heard by a judicial officer regarding the propriety of the transition. *Id.*

These allegations state plausible claims. When a law creates an adjudicatory procedure governing case-by-case determinations that result in the infringement of parental rights, the government must provide parents these procedural protections. *See* Op. Br. at 49–51. The Complaint plausibly alleges that the Policy violates this requirement.

## VIII.  THE POLICY IS FACIALLY INVALID

Finally, the District contends that Ms. Regino fails to state valid facial claims. This is wrong too.

A law is facially invalid under the First Amendment when "a substantial number of [its] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). The Policy fails this test. As discussed, it is not appropriate to socially transition children based solely on their request, and the state must presume that all parents are fit in the first instance. *See* Op. Br. at 42–46. The Policy's overbroad application reveals a "lack of tailoring" that renders it facially invalid under the First Amendment. *Ams. for Prosp. Found. v. Bonta*, 594 U.S. 595, 615 (2021).

Outside the First Amendment context, a law is facially invalid when it "lacks a plainly legitimate sweep" or there are "no set of circumstances . . . under which the law would be valid." *Moody*, 603 U.S. at 723; *see also Regino*, 133 F.4th at 967. For the same reasons the Policy is facially unconstitutional under the First Amendment, it also lacks a "plainly legitimate sweep" under the Due Process Clause. *See Stanley v. Illinois*, 405 U.S. 645, 654 (1972) (holding presumption of parental unfitness violates due process).

The District argues that laws are facially invalid under the Due Process Clause only if there is "no set of circumstances" in which they are valid. Resp. Br. at 32, 52. But this argument ignores the "plainly legitimate sweep" language set forth in *Moody* and *Regino*. 603 U.S. at 723; 133 F.4th at 967. In any event, the Policy is invalid in all its applications because it is not based on a valid "categorical" rule and

28

it does not provide parents an "individualized determination" compliant with due process before their children are transitioned. *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 789 (9th Cir. 2014).

The District also argues that the Policy is not facially invalid because some students are adults. Resp. Br. at 31–32. Ms. Regino's facial challenge, however, extends only to minor children, like her own. ER-40 (¶¶2–5); *see also* ER-115 (¶14). The fact that some small fraction of students may be eighteen years old or older is thus irrelevant. *See Doe v. Reed*, 561 U.S. 186, 194 (2010) (noting that plaintiffs must only demonstrate invalidity "to the extent of [the] reach" of the facial challenge).

## CONCLUSION

The Court should REVERSE and REMAND.


April 27, 2026                          Respectfully submitted,


                                        By: */s/Joshua W. Dixon*
                                        Joshua W. Dixon
                                        Courtney Corbello
                                        CENTER FOR AMERICAN LIBERTY
                                        2145 14th Avenue, Suite 8
                                        Vero Beach, FL 32960
                                        jdixon@libertycenter.org
                                        ccorbello@libertycenter.org

                                        *Attorneys for Appellant*
                                        AURORA REGINO

29

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-475

I am the attorney or self-represented party.

**This brief contains** 6,946 **words,** including _____ words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Joshua W. Dixon    **Date** 4/27/26

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov